UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Troy Nicholas MacDermott, | Case No. 25-cv-5 (JRT/DLM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jared Rardin, Warden, | |
| Petitioner. | |

This matter is before the Court on Petitioner Troy MacDermott's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Because Mr. MacDermott fails to show that his Due Process rights have been violated, the Court recommends that the Petition be denied, and this action be dismissed with prejudice.

## BACKGROUND

Mr. MacDermott is serving an 86-month term of imprisonment. (Doc. 12 ¶ 7; Ex. B at 2.) At the time he filed his Petition, and at all times relevant to his Petition, he was incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester").[1] (Doc. 12 ¶ 7; Ex. B at 1.) With good-conduct time credit ("GCT") his expected release date

---

[1] The records submitted by the BOP with its Response stated that Mr. MacDermott was in custody at FMC Rochester, but during the pendency of his Petition, Mr. MacDermott sent a Notice of Change of Address that his address has changed to the Cordova Center in Anchorage, Alaska. (Doc. 19.)

is October 1, 2025. (Doc. 12 ¶ 7; Ex. B at 1.) In his Petition, Mr. MacDermott challenges the validity of Federal Bureau of Prisons ("BOP") disciplinary proceedings that resulted in his loss of 27 days of GCTs and requests that the disallowed days be restored to him so that he may be released from custody sooner. (Doc. 1 at 1.)

***The BOP's disciplinary process***

Under 18 U.S.C. § 4042(a)(3), the BOP has authority to discipline people in its custody. If a BOP staff member witnesses or reasonably believes an inmate has committed a prohibited act, the staff member prepares an indecent report describing the alleged violation. 28 C.F.R § 541.5(a). The inmate will "ordinarily receive the incident report within 24 hours of staff becoming aware of the [the inmate's] involvement in the incident." *Id*. A BOP staff member will then investigate the allegations before the Unit Discipline Committee ("UDC") reviews the incident report. *Id*. § 541.5(b).

Ordinarily, the UDC will review the incident report within five business days, and the Warden must approve an extension beyond five days. *Id*. § 541.7(c). During the UDC's review of the incident report, the inmate has an opportunity to appear, make a statement, and present evidence. *Id*. 541.7(d)-(e). Based on its review, the UDC will decide whether an inmate committed the prohibited act, or otherwise may refer the incident report to the Discipline Hearing Officer ("DHO") for further review. *Id*. § 541.7(a)(1)-(3). But if an inmate is charged with a "Greatest or High severity prohibited act," the UDC must refer the incident report to the DHO. *Id*. 541.7(a)(4). Once the UDC has finished its review, the inmate will receive a written report of the UDC's decision. *Id*. § 541.7(h).

2

If the UDC refers an incident report to the DHO, the UDC will advise the inmate of their rights, and the DHO will hold a hearing on the incident report. *Id*. §§ 541.7(g), 541.8. At the DHO hearing, the inmate has an opportunity to have a staff representative, make a statement, and present witnesses and evidence. *Id*. § 541.8(d)-(h). After the hearing, the inmate will receive a written report of the DHO's decision. *Id*. § 541.8(h).

***The BOP's disciplinary proceedings against Mr. MacDermott***

On December 31, 2023, Mr. MacDermott was involved in an incident with another inmate (B.S.) in the FMC Rochester library. (Doc. 12 ¶ 9; Ex. D at 1.) On the evening of January 22, 2024, Mr. MacDermott received a copy of Incident Report No. 3884226 for a violation of Code 299, Disruptive Conduct High most like a Code 203, Threatening Bodily Harm. (Doc. 12 ¶ 9; Ex. D at 1.) According to the Incident Report, on January 22, 2024, the Special Investigative Services ("SIS") department concluded that Mr. MacDermott and B.S., who had been identified via CCTV footage, took part in a verbal altercation on December 31, 2023. (Doc. 12 ¶ 9; Ex. D at 1.) During the altercation, Mr. MacDermott "was seen aggressively yelling and pointing at inmate [B.S.]." (Doc. 12 ¶ 9; Ex. D at 1.) The Incident Report also states that Mr. MacDermott "grabbed" B.S.'s "personal items . . . which were sitting on a countertop and tossed them on the ground." (Doc. 12 ¶ 9; Ex. D at 1.) The investigating lieutenant concluded "[b]ased on the preponderance of evidence, review of CCTV footage, and interviews" that Mr. MacDermott "acted in a threatening manner, portrayed and projected, harm towards [B.S.], during this verbal altercation." (Doc. 12 ¶ 9; Ex. D at 1.)

3

According to the Incident Report, the investigating lieutenant delivered the Report to Mr. MacDermott and advised him of his rights during the disciplinary process, which Mr. MacDermott acknowledged and said he understood. (Doc. 12 ¶ 10; Ex. D at 3.) Mr. MacDermott also provided a statement saying, "I never threatened him. I just wanted him to leave. I worked in the library and had to stay. I would have walked away if I was not working." (Doc. 12 ¶ 10; Ex. D at 3.)

On January 25, 2024, the UDC conducted an initial hearing on the Incident Report. (Doc. 12 ¶ 11; Ex. D at 2.) During the hearing, Mr. MacDermott was read his rights and he stated that he understood them. (Doc. 12 ¶ 11; Ex. D at 2.) The Incident Report also shows that Mr. MacDermott provided the following statement to the UDC:

> I was training my dog in the library and the other inmate was intentionally distracting and antagonizing me because I wouldn't let him pet the dog. I lost my cool and told him he needs to leave, and he refused. After he refused to leave, I jumped up and screamed at him to leave. I did knock over his stuff. After he agreed to leave, I helped pick up his stuff and he left.

(Doc. 12 ¶ 11; Ex. D at 2.) The UDC referred the Incident Report to the DHO for a hearing, advised Mr. MacDermott of his rights during the DHO hearing, and gave him an opportunity to request witnesses and a staff representative. (Doc. 12 ¶ 11; Ex. D at 2; Ex. E; Ex. F.) Mr. MacDermott called N.C. as a witness but declined to request a staff representative. (Doc. 12 ¶ 11; Ex. F.)

On January 30, 2024, the DHO conducted a hearing on the Incident Report and issued a written report on June 14, 2024. (Doc. 12 ¶ 12; Ex. G.) Mr. MacDermott received a copy of the DHO Report on June 18, 2024. (Doc. 12 ¶ 12: Ex. G at 5.) The DHO Report

4

shows that at the DHO hearing, Mr. MacDermott denied the charge, presented a 12-page written statement as documentary evidence, and provided an oral statement:

> I should have remained calm and should have gotten one of the officers instead of yelling at him. I shouldn't have done it; screaming at him. I asked him calmly to leave, and he refused to leave. I got angry, yelled at him, and threw his stuff off the table. Afterwards, he said fine, he'll leave, but he told me to pick his stuff up off the floor. I regained my composure and picked his stuff up and he left. I didn't threaten him or hurt my dog.

(Doc. 12 ¶ 13; Ex. G at 1-2.)

N.C. could not attend the hearing, but the DHO obtained N.C.'s statement prior to the hearing. (Doc. 12 ¶ 13; Ex. G at 2.) According to the DHO Report, N.C. stated:

> [B.S.] was arguing with Troy and Troy told him to leave, and [B.S.] wasn't leaving. Troy told him many times to leave and [B.S.] wasn't. Troy hit [B.S.'s] stuff onto the floor. [B.S.] was the instigator. [B.S.] was harassing him and not leaving and invoking Troy. I didn't hear them talking about the dog. I was right outside the door in the hall.

(Doc. 12 ¶ 13; Ex. G at 2.)

The DHO found that the investigating lieutenant's written statement in the Incident Report and the CCTV footage corroborating the Incident Report contributed to the greater weight of the evidence supporting the disciplinary charge. (Doc. 12 ¶¶ 13-16; Ex. G at 3-4.) The DHO also considered N.C.'s witness statement, as well as Mr. MacDermott's written and oral statements, and determined that they added weight to the Incident Report. (Doc. 12 ¶¶ 13-16; Ex. G at 3-4.) The DHO found that although Mr. MacDermott "did not outright threaten any bodily harm; however, [his] actions not only threatened the orderly running of the institution, but they were also threatening in nature to the wellbeing of another inmate, and [Mr. MacDermott's] dog." (Doc. 12 ¶¶ 13-16; Ex. G at 4.) The DHO

concluded that Mr. MacDermott "committed the prohibited act of Disruptive Conduct Most Like Threatening Bodily Harm, Code 299, [most like] 203." (Doc. 12 ¶¶ 13-16; Ex. G at 4.)

The DHO sanctioned Mr. MacDermott with the disallowance of 27 days of GCT, 30 days of disciplinary segregation (suspended 180 days), and 30 days of lost commissary privileges. (Doc. 12 ¶ 14, Ex. G at 5.) According to BOP Program Statement 5270.09, *Inmate Discipline Program*, the sanctions imposed on Mr. MacDermott are within the available sanctions for high severity level prohibited acts. (Doc. 12 ¶ 18; Ex. A at 47-50.)

In his Petition, Mr. MacDermott lists 10 grounds for relief from the BOP's disciplinary sanctions, plus an alternative ground related to the timeliness of this Court's decision. (Doc. 1 at 5-7). Some of Mr. MacDermott's theories have no remedy and merit no further discussion, such as an attack on the BOP's page limit for administrative remedy appeals. As for the grounds that may be considered on their merits, Mr. MacDermott's claims are Due Process challenges to the procedure and result of the disciplinary proceedings.

## ANALYSIS

### I.   MR. MACDERMOTT HAS FAILED TO SHOW THE BOP'S DISCIPLINARY DETERMINATION DENIED HIM DUE PROCESS.

To obtain § 2241 habeas relief, Mr. MacDermott must show that he is "in custody in violation of the Constitution of the United States." 28 U.S.C. § 2241(c)(3). The denial of good conduct time as discipline "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). But "prison

6

disciplinary proceedings are not part of a criminal prosecution" and so the full array "of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, to satisfy due process, prison disciplinary proceedings must include "(1) advance written notice of the charges; (2) an opportunity [for an inmate] to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record." *Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997).

Mr. MacDermott fails to show that the BOP's disciplinary determination denied him due process. He received advance written notice in the form of the Incident Report he received on January 22, 2024. (Doc. 12 ¶ 9; Ex. D at 1.) He had an opportunity to call witnesses, present evidence, and make a statement at the DHO hearing, and indeed another inmate provided a witness statement on Mr. MacDermott's behalf. (Doc. 12 ¶ 13; Ex. G at 2.) Mr. MacDermott received a written statement of the factfinder's decision in the form the of DHO report. (Doc. 12 ¶¶ 13-16; Ex. G at 3-4.) And the DHO outlined the specific evidence he relied on to support the findings and disciplinary determination. (Doc. 12 ¶¶ 13-16; Ex. G at 3-4.)

A.   **The BOP provided Mr. MacDermott with advance written notice of the charges against him.**

Mr. MacDermott claims that the BOP failed to provide him with proper advance written notice of the charges against him because he did not receive a copy of the Incident Report "within 24 hours of the time staff became aware of his involvement in the incident" which led to the charge against him. (Doc. 1 at 6.) Records submitted by Respondent show

that Mr. MacDermott received a copy of the Incident Report in the evening of January 22, 2024. (Doc. 12 ¶ 9, Ex. D at 1.) This was three days before the UDC hearing, which occurred on January 25, and eight days before the DHO hearing, which occurred on January 30, 2024. The Incident Report also detailed the results of the SIS investigation and put Mr. MacDermott on notice that he was charged with a violation of Code 299, Disruptive Conduct High most like Code 203, Threatening Bodily Harm, for conduct that occurred in the facility library on December 31, 2023. (Doc. 12 ¶ 9, Ex. D at 1.)

Mr. MacDermott is correct that BOP failed to provide him with a copy of the Incident Report within 24 hours after staff learned of his involvement in the December 31 altercation with B.S., and is also right that BOP regulations require that an inmate "ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident[.]" 28 C.F.R. § 541.5(a). But a failure to do so does not *itself* amount to a due process violation if the "minimum requirements" of due process were still met. *Ward v. King,* No. 24-cv-114 (JRT/DTS), 2024 WL 5340680, at *4 (D. Minn. Nov. 27, 2024), *R. & R. adopted*, 2025 WL 240771 (D. Minn. Jan. 17, 2025) (citing *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)). Here, they were: Mr. MacDermott received the Incident Report about three weeks after the incident, and early enough for him to prepare for his disciplinary hearings. The Court therefore finds that Mr. MacDermott was properly provided with advance written notice of the charges against him.

## B. The BOP provided Mr. MacDermott with the opportunity to present evidence in his defense.

Mr. MacDermott also alleges that the BOP violated his due process rights because it failed to interview N.C., the witness he requested. (Doc. 1 at 6.) BOP records undercut Mr. MacDermott's claim. The DHO report shows that although N.C. was not physically present at the DHO hearing to provide testimony, he did provide a written statement which the DHO considered during the hearing. (Doc. 12 ¶ 13, Ex. G at 2, 4.) Additionally, Mr. MacDermott provided his own 12-page written statement and oral testimony in his defense at the DHO hearing, which the DHO also considered. (Doc. 12 ¶ 13, Ex. G at 1, 3-4.) Accordingly, the Court finds that Mr. MacDermott was provided with the opportunity to call witnesses and present evidence on his own behalf.

Mr. MacDermott also claims that the BOP violated his Sixth Amendment right "to have access to evidence against [him]" because Respondent "refused to allow [him] to view the CCTV footage of the incident." (Doc. 1 at 7.) The Eighth Circuit has not addressed whether an inmate's right to present witnesses and documentary evidence in a disciplinary hearing includes a right to view or obtain other evidence to be presented. But a court within this District, faced with a question like the one Mr. MacDermott presents, followed the Seventh Circuit's lead when it reasoned that because "criminal defendants lack a constitutional right to discovery, it seems implausible that inmates in disciplinary hearings, where the 'full panoply of rights' do not apply, would possess such a right." *Hunter v. Rios*, No. 18-cv-1773 (ECT/DTS), 2019 WL 2442243, at *4-*5 (D. Minn. May 15, 2019), *R. &*

9

*R. adopted*, 2019 WL 2436267 (D. Minn. June 11, 2019) (citing *Shroyer v. Cotton*, 80 F. App'x 481, 484-85 (7th Cir. 2003)).

The *Hunter* Court concluded, based on the Seventh Circuit's reasoning, that "[w]hatever right [an inmate] may have to present evidence during the disciplinary hearing, it does not follow that this creates a right to compel discovery from prison officials for use in mounting a defense." *Id*. While the Court could certainly envision circumstances where the failure to provide discovery in the disciplinary context implicates a prisoner's liberty-based Due Process rights, this is not such a case. Mr. MacDermott had a right to the CCTV footage of the December 31 altercation, had has not alleged, let alone demonstrated, prejudice. *Id*. (quoting *Adams v. Fed. Bureau of Prisons*, 2011 WL 1793381, at *2 (D. Minn. Dec. 6, 2011) ("[A] habeas petitioner needs to demonstrate that he was harmed by the [due process] violation in order to obtain relief."). Indeed, Mr. MacDermott's own evidence seems consistent with the DHO's determination, irrespective of the CCTV footage. Mr. MacDermott points to nothing in the record to suggest that the result of the hearing would have been different if he had also been given access to CCTV footage.

Thus, the Court concludes that Mr. MacDermott was given an opportunity to present evidence in his defense.

**C.    The DHO provided a written statement explaining the reasons for the disciplinary determination.**

Mr. MacDermott claims that he did not receive a copy of the DHO's report on time and this delay "prejudiced [his] ability to appeal" the violation of his due process rights. (Doc. 1 at 8.) Respondent does not dispute that Mr. MacDermott did not receive a copy of

the DHO report until June 18, 2024—almost six months after the DHO hearing occurred. But according to Respondent, even this extensive delay is not a due process violation because Mr. MacDermott was still able to appeal the DHO's disciplinary determination.

According to BOP Program Statement No. 5270.09, after a DHO hearing "[t]he DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision." (Ex. A at 35.) But the use of "ordinary" does not create an ironclad requirement that the DHO deliver their decision within 15 days. *See LaFon v. Fikes*, No. 22-cv-487 (ECT/DJF), 2023 WL 8720308, at *2 (D. Minn. Nov. 13, 2023), *R. & R. adopted*, 2023 WL 8719986 (D. Minn. Dec. 18, 2023). And, as discussed above, the BOP's failure to follow its own procedures does not itself spawn a due process claim. *Ward* WL 5340680, at *4.

Instead, to establish that the delay in receiving the DHO report violated his due process rights, Mr. MacDermott must show that he was prejudiced. *LaFon*, No.2023 WL 8720308, at *3. The BOP's disciplinary appeal process requires inmates to file the initial request for administrative review (BP-9) within "20 calendar days following the date on which the basis for the request occurred." 28 C.F.R § 542.14(a). "Courts in this district have repeatedly interpreted this language as starting the 20-day clock for appeal from the date of *receipt* of the DHO report, not the date of the hearing.'" *LaFon*, No.2023 WL 8720308, at *3 (quoting *Arroyo v. Fikes*, 21-cv-2489 (KMM/BRT), 2022 WL 2820405, at *3 (D. Minn. May 5, 2022) (collecting cases) (emphasis in original), *R. & R. adopted sub nom.*, 2022 WL 2819577 (D. Minn. July 19, 2022).) The record here shows that although Mr. MacDermott did not receive the DHO's report until almost six months after the DHO

11

hearing, he was still able to fully exhaust his administrative remedies by appealing his discipline to both the BOP's Regional and Central Offices. (Doc. 1 at 2-4.) Accordingly, the Court finds that Mr. MacDermott was provided a written statement explaining the reasoning in support of the DHO's disciplinary determination.

**D.     The DHO's disciplinary determination is supported by some evidence in the record.**

Finally, the Court addresses Mr. MacDermott's claims that there was insufficient evidence to support a violation of Disciplinary Conduct Code 299 most like Code 203. Due process requires that a DHO's finding be based on "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quoting *Hill*, 472 U.S. at 455-56). Instead, "[i]f there is 'any evidence in the record' that could support the finding of the disciplinary authority, then the sanctions comport with due process." *LaFon*, No.2023 WL 8720308, at *4.

The Incident Report and DHO Report satisfy this standard; some evidence supports the DHO's conclusion that Mr. MacDermott violated Code 299, Disruptive Conduct High, most like a Code 203, Threatening Bodily Harm. The DHO's Report shows that the DHO found that the greater weight of the evidence supported the charge based on the reporting officer's written statement in the Incident Report regarding the results of the investigation, and the DHO's review of the CCTV video footage of the incident, which corroborated the reporting officer's statement in the incident report. (*See* Doc. 12 ¶ 14, Ex. D at 1, Ex. G at

3-4.) Based on this evidence, the DHO determined that while Mr. MacDermott did not make an outright threat of bodily harm, his disruptive actions during the incident were communicated in a threatening manner.

During his UDC hearing, Mr. MacDermott admitted "I lost my cool and told him he needs to leave, and he refused. After he refused to leave, I jumped up and screamed at him to leave. I did knock over his stuff." (*See* Doc. 12 ¶¶ 11, 16, Ex. D at 2, Ex. G at 3.) Mr. MacDermott made a similar admission at his DHO hearing. (*See* Doc. 12 ¶ 16, Ex. G at 1.) The DHO found that Mr. MacDermott's admissions at the UDC and DHO hearings along with his written 12-page statement showed that he displayed disruptive behavior by acting in a threatening manner toward another person and corroborated the Incident Report. (Ex. G at 3.)

As a result, the DHO sanctioned Mr. MacDermott with the disallowance of 27 days of GCT, 30 days of disciplinary segregation (suspended 180 days), and 30 days of lost commissary privileges. (Doc. 12 ¶ 14, Ex. G at 5.) Mr. MacDermott claims that this sanction amounts to an "unwarranted sentencing disparity." (Doc. 1 at 7.) However, Respondent submitted BOP Program Statement 5270.09, *Inmate Discipline Program*, which shows that the sanctions imposed on Mr. MacDermott are within the available sanctions for high severity level prohibited acts. (Doc. 12 ¶ 18; Ex. A at 47-50.) And Mr. MacDermott points to no evidence in the record to show that this sanction is disparate from sanctions other similarly situated inmates have received. Accordingly, the Court finds that some evidence supports the DHO's conclusion that Mr. MacDermott violated Code 299, Disruptive Conduct High, most like Code 203, Threatening Bodily Harm.

For all these reasons, the Court concludes that Mr. MacDermott has failed to establish that the BOP's disciplinary determination resulting in his loss of 27 days of GCT amounts to a due process violation and recommends that his Petition be denied.

## II.   AN EVIDENTIARY HEARING IS NOT NECESSARY.

Finally, an evidentiary hearing is appropriate only when material facts are disputed. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). Because this matter can be resolved on the record, the Court finds no evidentiary hearing is necessary.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Mr. MacDermott's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**; and

2. This matter be **DISMISSED WITH PREJUDICE**.

Date: May 8, 2025                              *s/Douglas L. Micko*
                                               DOUGLAS L. MICKO
                                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).